# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 19, 1924.

HOWARD W. JACKSON, ET AL.,

VS.

EZRA B. WHITMAN, ET AL.

Philip B. Perlman, City Solicitor, and Charles C. Wallace, Assistant City Solicitor, for plaintiffs.

Joseph C. France, William H. Maltbie and Thomas H. Robinson, Attorney General, and Herbert Levy, Assistant Attorney General, for defendants.

STEIN, J.—

The bill in this case was filed by Mr. Howard W. Jackson, as a taxpayer and citizen of Baltimore, and the City of Baltimore, a municipal corporation, as plaintiffs, against the

members of the Public Service Commission of Maryland, and the United Railways & Electric Company of Baltimore, a corporation, defendants, to have the Court "vacate and annul" an order of the Public Service Commission, allowing the United Railways & Electric Company, a defendant, to increase its rates of car fare and to enjoin the putting into effect that order, which began at midnight of May 31st, 1924; is to run to midnight of April 30th, 1925, and is subject to constant review and change by the Commission at any time, and makes the following important changes in the car fare rates thereupon in force, viz:

A. Raises the adult base fare from 7 to 8 cents, with a four-cent fare for children under 12 years of age.

B. Abolishes the extra fare on the Curtis Bay line.

C. Gives a five-cent ticket rate to school children over 12 years of age.

D. Changes certain fare zone limits in the city.

E. Establishes a bus service, east of Patterson Park avenue, running north and south across the city.

F. Requires monthly reports of the effect of the above changes on the income of the company.

G. Requires the proceedings pending for the valuation of the company's properties to be pushed to a conclusion.

At the hearing, the plaintiffs based their right to the relief asked for on the ground that the order attacked was unlawful, unreasonable and unjust. They charged it was unlawful because:

1. Although an emergency did not exist it allowed the railways company an increase in fare when the company's properties had not been valued.

2. The order abolished certain fare zones in the city limits, which necessarily resulted in an increased fare to riders in other zones, which action was contrary to a policy of the Commission adopted and put into effect sometime ago, i. e., that a fare zone should not be changed or abolished, until such could be done without increasing the fare of riders in other zones.

Since the hearing it was suggested that the order attacked was unlawful, because passed by the Commission *sua sponte* and without the Railways Company having asked for an increase in fare rates.

The plaintiffs also contended, that the order attacked was "unreasonable and unjust," because, while it decreased the rate of some riders, it increased the fare to a greater number of other riders, notably to the short rider.

Taking up first the point, that "in the absence of an emergency, the Commission cannot increase or allow an increase of fare without a valuation of the Railway Company's properties having been made first." Without passing upon this question as to the existence vel non of an emergency, I found nothing in this case, which, under the Maryland law, forbids the Commission from allowing an increase in the fare rates before the company's properties have been valued. In its petition in this case the Railways Company asked: either an increase in fare *based on a valuation of its properties;* or if no valuation was had, asked for such an increased fare as would enable it to earn the $1,500,000, the Commission in a former proceeding held was necessary for it to earn. It might very well be argued that the inability to earn such sum, was an emergency, and justified the Commission's order allowing an increase in fare.

If the action in changing the zones is a departure from the Commission's previously expressed and enforced policy, such departure cannot be controlled by the Courts, as the change of the fare zones and the giving of special rates to school children over 12 years of age, *is a legislative matter*, for the Commission, and not a *judicial* matter, for the Courts, even if such change result in an increased fare to some riders.

3. The third point urged: that the Commission's action was unjust, because, "it was not based on the Railway Company's application," was not raised until after the final hearing. The record shows that while the petition of the Railways Company upon which the hearing was had does not expressly ask for an increase in the fare rate, yet a prayer, in its petition, is that the Commission "will investigate the matters and facts set forth," "together with any other matters and facts relevant or pertinent hereto;" and that thereafter the Commission will fix and determine a *schedule of fares*

*and charges to be collected.* And, at the very threshold of the hearing, counsel for the Railways Company asked for an increase in fare, so that the record shows the Commission in passing the order attacked, acted upon the prayer in the Railways Company's petition.

Whether or not the order passed is unreasonable or unjust, depends entirely upon the evidence; in passing upon which, I must follow the well established rules laid down by the Court of Appeals, and set out in the following excerpts taken from its opinion in the N. C. Rwy. Co. case, 122 Md. 355-388-89:

"The power of the Commission to fix reasonable rates is *legislative*—and that the functions of the Court in reviewing the action of the Commission is strictly *judicial,* and are exercised *only for the purpose of determining whether such* action of the Commission is unreasonable or unlawful." "That in all trials, actions and proceedings coming under the provisions of this Act, or growing out of the exercise of the authority and powers granted herein to the Commission, the burden of proof shall be upon the party adverse to such Commission, or seeking to set aside any determination. requirement, direction or order of said Commission, to show by clear and satisfactory evidence that the determination, requirement, direction or order of the Commission complained of is unreasonable or unlawful as the case may be."

"Upon application to the Court for an injunction restraining the execution from order of the Commission, the *Court has no authority to determine what would be a reasonable rate for the service required* or *to establish* rates, but its power is limited to the determination of the question whether the rates fixed by the Commission are unreasonable or unlawful, and until it it made to appear by clear and satisfactory evidence, that the action of the Commission is unreasonable or unlawful the Court is without power to enter any restrictions on the Commission's order."

"In determining these mixed questions of law and fact, the Court confines itself to the ultimate question as to whether the Commission acted within its power. It will not consider the expediency or wisdom of the order, or whether on like testimony it would

have made a similar ruling. The findings of the Commission are made by law *prima facie* true, and this Court has ascribed to them the strength due to the judgment of a tribunal approved by law and informed by experience."

"Its conclusion, of course, is subject to review, but *when supported by evidence is accepted as final;* not that its decision involving as it does many and such vast public interests, can be supported by a mere scintilla of proof, but the Courts will not examine the facts further than to determine whether there was substantial evidence to sustain the order."

Applying these rules to the record in this case, which was confined entirely to that taken before the Commission, no testimony having been taken at the hearing in this Court, it appears that a hearing was had before the Public Service Commission, "a tribunal approved by law and informed by experience" and which had had pending before it at various times for nearly six years all the questions at issue in this case; that such hearing lasted seven days, the typewritten transcript of the proceedings and testimony in which fills nearly fourteen hundred pages; that, at this hearing, eminent and distinguished counsel appeared for the various parties in interest, and took part in the proceedings; all of whom were fully heard; and that after mature deliberation, two, or the three Commissioners, passed the order attacked, filing with it a lengthy opinion, *in which they reviewed and discussed in great detail the evidence produced, and in which they gave with unusual force and ability, the reasons upon which the Commission's order was based.

Senator Harper, the other member of the Commission, dissented and in a lucid and persuasive opinion. gave his reasons therefor; but did not base his dissent upon want of evidence to support the findings of the Commission, but based it upon two things, viz:

A. An interpretation of some of the evidence differing from that the other two Commissioners gave to it.

B. His opinion that the car fare rate should not be raised until the valuation of the Company's property was finished. This is apparently his chief reason for dissent.

While these reasons may be well founded and persuasive, yet, under

the rule laid down by our Court of Appeals above set forth, they do not authorize me to vacate and annul the order of the Commission as based upon a "mere scintilla of proof," so that I find the order of the Commission not unlawful, unreasonable nor unjust, but supported by *"clear and satisfactory evidence,"* and ascribe to it "the strength due to the judgment of a tribunal approved by law and informed by experience."

I will sign an order dismissing the bill.